UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy No. 14-B-80117 |
| JOSE ACEVEDO, JR. ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | Judge Lynch |
| ) | |

## MEMORANDUM OPINION

The Debtor, Jose Acevedo, Jr., seeks relief pursuant to 11 U.S.C. § 362(k)(1) for certain post bankruptcy petition conduct taken by CCS Contractor Equipment & Supply, Inc. ("CCS") and its attorneys, James and John Dore (collectively, "Respondents"), to enforce a prepetition judgment which the Debtor alleges violated the automatic stay. For the reasons set forth below, the Debtor's motion will be granted.

## JURISDICTION AND FACTUAL SUMMARY[1]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a matter arising under title 11 and is a "core proceeding" under 28 U.S.C. § 157(b)(2). Because matters such as this "stem[] from the bankruptcy itself," this Court has constitutional and statutory authority to enter a final order in this proceeding. *Stern v. Marshall*, 546 U.S. 500 (2011).

CCS sells and rents tools, supplies and equipment to construction companies. Beginning around 2008, Village Concrete Experts, Inc. ("Village Concrete") purchased or rented tools,

---

[1] The factual summary set out below and the findings contained in the Court's February 24, 2016 Minute Order (ECF No. 123) ruling on the Debtor's motion to avoid liens (ECF No. 22) constitute the Court's findings of fact as required by Fed. R. Bankr. P. 7052.

equipment and supplies from CCS. Mr. Acevedo was the sole owner and president of Village Concrete, which was dissolved by the Illinois Secretary of State in or about April 2013. During that year CCS obtained judgments against both the Debtor and Village Concrete in the Circuit Court of Cook County, Illinois in the total amount of $14,868.97. (Joint Stip., ECF No. 94, ¶¶ 5-9.)

At all times relevant, CCS has been represented by John M. Dore and James M. Dore, attorneys who practice law at the Chicago firm of John M. Dore & Associates. In connection with its efforts to enforce the judgments, CCS, through its attorneys, caused a citation to discover assets to be issued by the circuit court on March 9, 2013. (Debtor Ex. A.) The citation, directed at Mr. Acevedo, was served upon him on March 11, 2013. (Joint Stip., ECF No. 94.) Mr. Acevedo appeared in court on March 29, 2013, in the first of several continued citation proceedings held between March and July 2013 for status on payment of the judgment and for the production of documents. On July 23, 2013, the state court entered a rule to show cause against Mr. Acevedo, returnable on August 22, 2013, for his failure to produce documents responsive to the citation. (Debtor Ex. F. *See also* Joint Stip., ECF No. 94.) The state court continued the initial hearing on the rule to October 22, 2013, commanding Mr. Acevedo to produce certain documents by that time. (Debtor Ex. G.) When Mr. Acevedo failed to appear at the October 22 hearing, the circuit court issued a writ of body attachment against him. (Debtor Ex. H.) The proceedings on the citation, rule and body attachment were continued to December 19. (Debtor Ex. I.) Mr. Acevedo apparently came to court on December 19, but left before the matter was heard, whereupon the state court issued an alias writ of body attachment. (Debtor Ex. J.)

CCS then brought a motion for turnover of assets against Mr. Acevedo which the state court heard on January 15, 2014. Again Mr. Acevedo failed to appear. At the request of attorney James Dore, the court entered a turnover order as to certain vehicles in which Mr. Acevedo had an ownership interest. (Debtor Ex. M.) James Dore testified that when he obtained that order he was not aware that the Debtor had filed for bankruptcy relief that morning.

Instead of appearing at the circuit court for the scheduled hearing January 15, Mr. Acevedo filed his Chapter 7 bankruptcy petition. At approximately 4:55 p.m. that day, the Debtor's bankruptcy attorney sent a fax to "James/John Dore" which attached a copy of the notice of Debtor's bankruptcy filing. The fax cover page bore the following boldface message: "**URGENT** PLEASE PULL BODY ATTACHMENT AS SOON AS POSSIBLE. ATTACHED IS JOSE ACEVEDO'S NOTICE OF BANKRUPTCY." (Debtor Ex. L.) CCS's attorneys testified at trial that they received the fax, yet admitted that they took no steps at the time to quash the writ or contact the sheriff's office.

Instead, on January 24, James Dore on behalf of CCS mailed and faxed a demand letter to Debtor's counsel, in which he alleged that the Debtor was attempting to shield the four vehicles titled in the name of Village Concrete through his own bankruptcy proceeding. (Debtor Ex. N.) The letter demanded that the Debtor, "as the corporate representative" of Village Concrete, turn over the four vehicles listed in the petition as titled in the name of Village Concrete for sale pursuant to the January 15, 2014 turnover order. "In this way," attorney Dore wrote, "we can avoid having court intervention in what seems to be a straight-forward [sic] issue." He concluded, "If I do not hear from you by January 31, 2014 at 5 pm, I will assume that Mr. Acevedo is refusing to turnover the corporate property and will proceed accordingly." The

January 24 letter made no mention of the Debtor's January 15 request to "pull the body attachment."

On January 30, 2014, CCS caused a separate citation to discover assets directed to Village Concrete Experts, Inc. to be issued and served on the Debtor. (Debtor Ex. O.) That citation was returnable on February 26, 2014.

Around 4:00 p.m. on February 14, 2014, at about 4:00 p.m., two members of the sheriff's police arrived at the Debtor's home in Lake in the Hills, Illinois to enforce the alias writ of body attachment. Mr. Acevedo was watching his two-year-old granddaughter at the time. Mr. Acevedo informed the officers that he had filed for bankruptcy. They permitted him to speak to his bankruptcy attorney by phone who then spoke with one of the officers. The officers then placed Mr. Acevedo under arrest, handcuffing him inside his home in front of his wife and grandchild. They then placed him in their squad car and drove to the sheriff's offices in Woodstock, Illinois, where he was held. Mr. Acevedo testified that initially he was told that he would need to post a bond before he could be released. However, after being detained for approximately 15 minutes, he was told that he was free to go. One of the officers then drove him home.

James Dore testified that the Debtor's attorney called him on February 14 to say that her client had been arrested. Attorney Dore called the sheriff's office to request the Debtor's release. Mr. Acevedo did not have to post bond or make any payments. The uncontested testimony at trial established about two and one half hours elapsed from the time Mr. Acevedo was arrested until he was returned home.

The circuit court quashed its alias writ of body attachment upon attorney Dore's motion on February 18, 2014. (Debtor Ex. P.) The circuit court's order states that the supplemental

proceedings brought by CCS were to be stayed until further order due to the bankruptcy case. Both Mr. Acevedo and attorney Daniel Breen, appearing for the Debtor, were present at the courthouse on the February 26 return date for the citation against Village Concrete. The matter was continued to April 9, 2014 for the Debtor to produce documents and records. The Debtor testified that he paid attorney Breen $200 to appear and represent him at that hearing.

CCS argues that while at the courthouse on February 26, John Dore and Daniel Breen reached an oral agreement whereby Mr. Acevedo would not bring a motion for violation of the automatic stay if CCS agreed to continue the citation proceedings against Village Concrete. At trial, both Mr. Breen and the Debtor denied under oath the existence of or authorization for any such agreement. Mr. Breen further testified that he represented the Debtor and not Village Concrete. The order entered by the circuit court that day did not reference any agreement.

The Debtor filed a motion for contempt and sanctions for violation of the automatic stay against CCS and its attorneys, James and John Dore. The Court held a two-day evidentiary hearing on the motion at which the Debtor, the Dore attorneys, CCS's vice president, Leigh Hamm, attorney Breen and the Debtor's bankruptcy attorney, Rebecca Lamb, testified. In addition, the parties submitted to the Court a number of post-trial submissions, all of which have been considered for this ruling.

## DISCUSSION

An "individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir.

2009). Here, it is undisputed that CCS, through its attorneys James Dore and John Dore, was aware of the Debtor's bankruptcy at least as early as 4:55 p.m. on January 15, 2014, when its attorneys received the fax notice.

The Debtor argues that CCS and its attorneys James and John Dore violated the automatic stay by (i) failing to take steps to quash the pre-petition alias writ of body attachment against the Debtor after CCS learned of the bankruptcy petition, which resulted in the arrest of the Debtor on February 14, 2014, (ii) demanding the turnover of certain equipment and vehicles on January 24, 2014 and (iii) causing the January 29, 2014 citation to be issued and served on the Debtor. CCS's primary argument is that its actions were directed at Village Concrete Solutions, Inc. and the corporation's assets, not against the Debtor nor the Debtor's directly owned assets.

Had the judgment been solely against the Debtor or had the Debtor's company been an unincorporated sole proprietorship rather than a separate corporate entity, then CCS's actions clearly would have violated the automatic stay. Section 362(a) prohibits:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a). It is undisputed that CCS's claim against the Debtor arose pre-petition and that it obtained the judgment against him pre-petition. Thus, to the extent the citation proceeding was a supplementary proceeding to enforce the judgment against the Debtor, it was "a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case ... to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1).

The writ of body attachment was issued in connection with the pre-petition citation. The arrest by the sheriff pursuant to that writ was an "employment of process" in support and continuance of the citation proceeding. A creditor "who has notice of a bankruptcy filing and had previously caused a bench warrant to be issued in order to collect a debt, has an affirmative duty to request that the warrant-issuing court recall the warrant." *Galmore v. Dykstra (In re Galmore)*, 390 B.R. 901, 914 (Bankr. N.D. Ind. 2008). Here, CCS and its attorneys took no action to seek to quash the writ of body attachment until after the Debtor was arrested on February 14, 2014, more than four weeks after the Debtor filed his bankruptcy petition and more than four weeks after CCS's counsel acknowledge receiving attorney Lamb's fax notice of her client's bankruptcy. Despite their "affirmative duty" to do so, the Respondents ignored the Debtor's request that they "pull [the] body attachment as soon as possible" so as to allow the process which they commenced to inexorably grind away until the Debtor had been taken from his home and placed in custody.

The January 2014 turnover order was entered in connection with the pre-petition citation proceeding.[2] While the order itself was entered before the bankruptcy, there is no dispute that

---

[2] As an initial matter, this ruling adopts and incorporates the findings and conclusions set out in the February 24, 2016 Minute Order that the "Turnover Order" by itself did not effect a prepetition transfer of ownership to CCS. (ECF No. 123, 4-5.)

CCS, through its attorneys continued to make demands under that order after they learned that Mr. Acevedo had filed his Chapter 7 petition. To demand the turnover of vehicles owned by the Debtor to satisfy a judgment against the Debtor is not only an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case," 11 U.S.C. § 362(a)(6), but also constitutes "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case," 11 U.S.C. § 362(a)(2), and an "act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). Additionally, since the pre-petition service of the citation on the Debtor creates a lien in all "nonexempt personal property … belonging to the judgment debtor in the possession or control of the judgment debtor," 735 ILCS 5/2-1402(m), then to the extent CCS demanded the turnover of nonexempt personal property of the Debtor pursuant to the turnover order, its actions is both an act to "enforce [a] lien against property of the estate," 11 U.S.C. § 362(a)(4), and an act to enforce a pre-petition lien against property of the Debtor. 11 U.S.C. § 362(a)(5).

The Respondents assert in defense that their post-petition acts were merely an attempt to collect the judgment against the assets of Village Concrete, not the Debtor, and that any acts directed at him were limited to his representative capacity. They are correct that Section 362(a) extends the automatic stay "only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants." *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983). Thus the automatic stay ordinarily "does not touch proceedings to enforce a court order against non-bankrupt third parties." *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998). In *Fox Valley*, the Seventh Circuit found that the automatic stay in the corporate debtor's Chapter 7 case did not deprive the district court of jurisdiction to sanction the debtor's registered agent and attorney in connection

with a citation proceeding that commenced against the debtor pre-petition. But while Section 362(a)(1) halts litigation against a co-defendant who subsequently files for bankruptcy, the stay "does not affect discovery regarding" a non-debtor co-defendant and the debtor "is obliged to participate to the extent it would be as a non-party." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 977 (N.D. Ill. 1992) (Easterbrook, J., sitting by designation). *See also, Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, No. 04-C-0767, 2004 WL 2973822 (N.D. Ill. 2004).

CCS's argument, thus, could be plausible as to its second citation directed at Village Concrete dated January 29, 2014. That citation is not directed at the Debtor and references only the judgment against Village Concrete. But both the turnover order which CCS sought to enforce and the writ of body attachment were issued in connection with the first citation—not the second. The first citation was directed at the Debtor and clearly issued in connection with the judgment against him. While that first citation also referenced the judgment against Village Concrete, the evidence shows that CCS did not inform the state court of the bankruptcy proceeding or seek to stay the proceeding as to the judgment against the Debtor until February 18, 2014, over a month after it learned of the bankruptcy. Indeed, the fact that CCS caused a second citation to be issued on January 29, 2014, which deleted references to the Debtor or the judgment against the Debtor tends to show CCS's awareness of the bankruptcy and concern that acts to enforce the first citation might violate the Debtor's automatic stay. Yet, the Respondents took no action to attempt to stay the state court proceedings in connection with the first citation until after the Debtor was arrested more than two weeks later.

CCS's argument that it was solely seeking to enforce a judgment against Village Concrete also fails because Village Concrete had been dissolved by the Secretary of State in

April 2013, well before the dates in question. Shareholders of a dissolved Illinois corporation have an interest in its property that is "protected by the automatic stay from any act to enforce a lien against property of the estate." *In re Lipuma*, 167 B.R. 522, 525 (Bankr. N.D. Ill. 1994). Under the Illinois Business Corporation Act, the "[d]issolution of a corporation terminates its corporate existence and a dissolved corporation shall not thereafter carry on any business except that necessary to wind up and liquidate its business and affairs." 805 ILCS 5/12.30(a). While "dissolution of a corporation does not [t]ransfer title to the corporation's assets," 805 ILCS 5/12.30(c)(1), the court in *Lipuma* found that dissolution created a sufficient equitable or beneficial interest of the shareholders in the assets of the dissolved corporation that the underlying assets were protected by the automatic stay of a shareholder in bankruptcy.[3] *Id. Cf. Fowler v. Shadel*, 400 F.3d 1016, 1018-19 (7th Cir. 2005) (noting with respect to vehicles owned by a Wisconsin corporation, its sole shareholder "could presumably have become the legal owner of the vehicles by dissolving the corporation before filing for bankruptcy."). *Fowler* and *Lipuma* taken together suggest that, at least with respect to a solely owned corporation such as Village Concrete, once an Illinois corporation is dissolved the contingent or equitable interest of the shareholder in the corporation's assets becomes sufficiently non-remote to be protected by the sole shareholder-debtor's automatic stay.

CCS argues that Village Concrete was insolvent and that under Illinois law a shareholder's interest in the dissolved corporation "is subject to the rights of creditors, and legal claims of third persons." It is correct that "shareholders are entitled to the residue of corporate funds only after providing for the rights of corporate creditors and the legal claims of third

---

[3] Although the Illinois Supreme Court has not ruled on the issue, at least one Illinois appellate court has approved the holding in *Lipuma*. *See In re Yudin*, 2014 IL App (4th) 130171-U, 2014 WL 702818 (Ill. App. Ct. 2014) ("Although a dissolved Illinois corporation retains legal title to its assets, shareholders 'have an interest in the assets of a dissolved corporation.'" (quoting *In re Lipuma*, 167 B.R. at 525)).

persons." *Mid-American Elevator Co. v. Norcon, Inc.*, 679 N.E.2d 387, 391 (Ill. App. Ct. 1996). But collateral owned by a debtor is protected by the automatic stay even if the collateral secures a loan greater than the value of the collateral. The fact that the debtor might not have 'equity' in the collateral may entitle the secured creditor to request relief from the automatic stay, but the automatic stay nonetheless protects such property until the stay is lifted. *See, e.g.*, 11 U.S.C. § 362(d)(2) (providing for relief from the stay on "request of a party in interest and after notice and a hearing" where "the debtor does not have an equity in such property [and] such property is not necessary to an effective reorganization").

Village Concrete was dissolved almost a year before the petition date and during a time that CCS was actively attempting to enforce its judgment against both the Debtor and Village Concrete. Additionally, the Debtor's petition and schedules mentioned in several places that Village Concrete Experts, Inc. was inactive and had not operated since late 2012. Further, CCS and its attorneys acknowledge being familiar with collection actions and, admit in their letter of January 24, 2014, that they were aware of the Debtor's personal bankruptcy schedules. The Respondents do not show they did not know or could not know upon reasonable inquiry that the Debtor's corporation had dissolved prior to the petition date.

Nor were their efforts to collect narrowly tailored towards the defunct corporation. Indeed, the Respondents' explanation that they sought only to collect from the corporation appears to have been formulated only after the Debtor demanded that the Respondents stop their collection efforts. For example, on January 15, 2014, the same date the bankruptcy petition was filed, the Respondents prepared an order for the state court containing the proposed finding that "Defendant Jose Acevedo has an ownership interest" in all seven of the listed vehicles. Yet, upon learning of the bankruptcy petition on January 15, rather than seeking to modify or stay the

order—which by its terms required the Debtor to turn over all seven vehicles to CCS by January 29, 2014—the Respondents sent their January 24 fax accusing the Debtor of attempting "to schedule corporate property on his personal bankruptcy schedules to protect it from Village Concrete's proper creditors" and demanding that he turn over the four vehicles that the Debtor had listed as titled in the name of Village Concrete in his bankruptcy schedules. Rather than seek any modification or stay of the turnover order, citation proceeding or writ of body attachment, or seek relief from the automatic stay from this Court, the Respondents demanded in its letter that the Debtor comply in order to "avoid having court intervention in what seems to be a straight-forward issue." Furthermore, there is no suggestion that either the turnover order or the writ of body attachment were necessary to protect CCS's pre-petition lien created by the citation. As such this case is readily distinguishable, for example, from *In re Kuzniewski*, 508 B.R. 678 (Bankr. N.D. Ill. 2014), where the creditor quickly informed the state court of the bankruptcy and the state court stayed all proceedings.

The Respondents' argument that the Debtor, by his state court attorney Daniel Breen, had settled and released them from the sanctions claim is not supported by the evidence. As noted above, attorney John Dore testified that while at the Cook County courthouse on February 26, attorney Breen agreed that Mr. Acevedo would not bring this motion if CCS continued the citation proceeding against Village Concrete. Mr. Dore characterized this as an oral settlement agreement. However, the Respondents did not present evidence, written or otherwise, that supports this assertion. The state court order entered on February 26 that provided for the continuance of the proceedings against Village Concrete made no mention of any settlement or release. It is not controverted that the state court proceedings were not resolved, or even stayed

pending order of the bankruptcy court, but only continued until a date certain in April 2014.[4]
Indeed, just the opposite is demonstrated by the fact, not challenged by the Respondents, that the Debtor's bankruptcy attorney was corresponding with attorney Dore regarding a sanctions motion and its settlement as late as March 10, well after the supposed settlement of the issue on February 26. At trial, attorney Breen denied under oath ever entering into the settlement on behalf of his client. And Mr. Acevedo testified that he never authorized a settlement.

Further, even if the Respondents' self-serving account of the supposed oral agreement of February 26 could be taken at face value, it is "terse to the point of ambiguity." *Trendmasters, Inc. v. Walgreen Co.*, 1996 U.S. Dist. LEXIS 10446 at *11-12 (N.D. Ill. 1996). Indeed, the parties conduct simply does not support the inference that they had in fact reached a meeting of the minds as to the terms of an actual settlement and release for the violation of the stay and the arrest and detention of Mr. Acevedo. At best, the record might allow the inference that the parties may have reached "an agreement to agree." However, it is recognized that such understandings might as much express "a desire not to be bound," as any commitment to be bound. *Id* at *15 (citing *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7th Cir. 1987)). As for such agreements,

> Sometimes the details can be ironed out; sometimes they can't. Illinois . . . allows parties to approach agreement in stages, without fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics. Approaching agreement by stages is a valuable method of doing business.

*Trendmasters*, 1996 U.S. Dist. LEXIS 10446 at *15 (quoting *Empro Mfg. Co. v. Ball-Co Mfg. Co., Inc.*, 870 F.2d 423, 426 (7th Cir. 1989) (Easterbrook, J.)). But that alone, which is all we find here, is not enough. *Id*.

---

[4] It is not disputed that attorney Breen represented only Mr. Acevedo, and not Village, at this time.

It is well established that a "'willful violation' [of the automatic stay] does not require a specific intent to violate the automatic stay." *Price v. United States*, 42 F.3d 1068, 1071 (7th Cir. 1994). Deliberate action, "taken with knowledge of the facts giving rise to the automatic stay, is sufficient to establish a willful violation . . . under § 362(h)—a debtor need not show that the creditor was subjectively aware of the applicable law or intended to violate it." *In re Benalcazar*, 283 B.R. 514, 534 (Bankr. N.D. Ill. 2002). To the extent the Respondents' post-petition collection efforts were directed only at the assets of Village Concrete, their actions violated the automatic stay because as they are found to be efforts to create, perfect, or enforce a lien or prepetition judgment against the Debtor's interest in the assets of the dissolved corporation. These acts include the January 24th turnover demand in response to the Debtor's bankruptcy notice and Respondents' causing the January 30th citation to be issued. While these acts by themselves might amount to no more than technical, non-willful violations of the stay, they are shown to be willful in light of the Respondents' continuing disregard of their affirmative duty to remedy the body attachment order upon becoming aware of the bankruptcy and their proceeding with their turnover demand. *See Will v. Ford Motor Credit Co. (In re Will)*, 303 B.R. 357, 364-65 (Bankr. N.D. Ill. 2003) (quoting *In re Price*, 103 B.R. 989, 993 (Bankr. N.D. Ill. 1989)).

This Court therefore finds that CCS, by and through its attorneys, willfully violated the automatic stay when it failed to take reasonable steps to quash the writ of body attachment that it had caused to be issued, when it attempted to enforce the January 15 turnover order and when it caused the second post-petition citation to be issued and served. Each of these acts or omissions occurred when the Respondents had actual knowledge of the Debtor's bankruptcy petition and despite requests by the Debtor's counsel that Respondents suspend collection activities and quash the writ of body attachment.

The Debtor contends that he has suffered actual damages as a result of the Respondents' violations of the stay, including "suffer[ing] stress and emotional distress... experienc[ing] emotions such as embarrassment and fear" as a result of his arrest. (Debtor's Prop'd Findings, ECF No. 94, ¶ 30.) He also claims money damages for having to retain attorney Breen to appear for him at the post-petition state court hearing and lost wages for the day he spent testifying in support of this motion.[5] He also asks to be awarded the attorney's fees incurred for bringing this motion and seeks the imposition of punitive damages.

An "individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The protection of the automatic stay "is financial in character ... not protection of peace of mind," and Section 362(k) "is not to redress tort violations but to protect the rights conferred by the automatic stay." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879-80 (7th Cir. 2001). Section 362(k) does not provide a remedy for emotional distress in itself, though it "might allow the court to 'top off' relief designed to redress any financial injury inflicted by the violation of the automatic stay with an award of damages for incidental harms, perhaps including emotional distress if adequately proved." 239 F.3d at 880. Claims of emotional distress are easy to manufacture and therefore courts have generally set a high threshold for proof of damages for emotional distress. The Debtor has failed to demonstrate damages for emotional distress caused by CCS. Although the Debtor testified that being taken away by the police made him momentarily feel like a criminal, he did not appear to have been traumatized by the event. His testimony disclosed, however, that he did not miss any work and did not incur any expenses because of his relatively brief detention.

---

[5] The Debtor additionally claims the retainer he paid to bankruptcy counsel as damages. This Court views that amount not as separate damages but rather as an accounting treatment of a portion of the attorney's fees incurred in bringing this motion.

However, the Debtor has demonstrated that he suffered actual injury as a result of the Respondents' violation of the automatic stay, and presents evidence of compensable damages that relate to that injury. *In re Sumpter*, 171 B.R. 835, 844 (Bankr. N.D. 1994). It is uncontroverted that the Respondents failed to affirmatively remedy the stay violations promptly upon learning of the bankruptcy, forcing the Debtor to incur the legal costs of his attorney addressing the pending citation to discover assets. Indeed, when the Respondents' knowing inaction resulted in his arrest, the Debtor was forced to again involve his attorney to secure his release. The testimony at trial also established that he then hired attorney Breen to represent him at the next circuit court hearing on the citation on February 26, 2014. The evidence demonstrates that the Debtor paid attorney Breen $200.00 as reasonable compensation for his representation, and necessarily incurred additional legal fees, the reasonable amount of which we find to amount to $425.50, for his bankruptcy attorney's work between February 4 and February 26, 2014 in connection with the violative citation and body attachment. *United States v. Price*, 176 B.R. 807, 809 (N.D. Ill. 1993), *aff'd and remanded sub nom. In re Price*, 42 F.3d 1068 (7th Cir. 1994) ("use of the word 'including' [in Section 362(k)] points to an intent that attorneys' fees be considered an element of actual damages").

Further, the award of attorney's fees and litigation costs reasonably incurred in connection with litigating this motion to remedy the stay violation is also appropriate. 11 U.S.C. § 362(h). The Debtor supported his request for fees by submitting the billing detail and affidavit of his bankruptcy attorney. In determining the reasonableness of the fees incurred, the Court notes that this matter was highly contentious. Based on this evidence, this Court finds that fees in the amount of $7,585.00 and legal costs in the amount of $34.40 were shown to be reasonably and necessarily incurred by the Debtor in connection with this motion. Additionally, Debtor

testified to necessarily incurring additional costs in the form of lost wages when he missed a day's work to travel to and testify at the trial of this matter. This Court finds that based on the evidence, the reasonable cost for his compensable lost wages is $344.80. *Pfeiffer v. Driscoll (In re Pfeiffer)*, Nos. 13-01253, 13-09091, 2015 Bankr. LEXIS 835, at *10 (U.S. Bankr. N.D. Iowa 2015); In re McLaughlin, No. 07-04375, 2007 Bankr. LEXIS 3857, at *19 (U.S. Bankr. D. Ariz. 2007); *see also In re Martin*, No. 11-8052, 2012 Bankr. LEXIS 906, at *9 (U.S. B.A.P. 6th Cir. 2012).

Finally, we turn to the Debtor's requests for punitive damages. The fact that the Respondents have been found to willfully violate the automatic stay does not, by itself automatically authorize such an award. "Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes." *In re Sumpter*, 171 B.R. at 845. Section 362(k) by its express terms "grants [bankruptcy courts] significant discretion in the award of punitive damages." *In re Radcliffe*, 390 B.R. 881, 899 (N.D. Ind. 2008), *aff'd*, 563 F.3d 627 (7th Cir. 2009). In determining whether punitive damages are appropriate for a violation of the automatic stay, the court will consider: "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *Will v. Ford Motor Credit Co. (In re Will)*, 303 B.R. 357, 368 (Bankr. N.D. Ill. 2003) (citing *In re Sumpter*, 171 B.R. 835, 845 (Bankr. N.D. Ill. 1994). Courts have also considered the creditor's failure to alleviate the effects of an action in violation of the automatic stay in determining an award for punitive damages. *In re Will*, 303 B.R. at 368.

The conduct in question here amounts to an egregious, indeed, flagrant violation of the automatic stay. As discussed above, on the same day Debtor filed his voluntary bankruptcy petition, the Respondents received Debtor's faxed notice of the bankruptcy filing and urgent

request to pull the alias writ of body attachment. Rather than take action to alleviate the effects of their stay violation, the Respondents continued to demand the turnover of assets, caused the circuit court to issue its citation to discover assets to the Debtor against his dissolved business, and permitted the writ of body attachment to stand until after Debtor had been arrested at his home. The vice president of CCS testified that her company, with annual sales of approximately $30 million dollars, is no stranger to collection cases, turning over as many as 15 to 20 such cases per year to its attorneys to prosecute. Their response to the Debtor's notice of bankruptcy and subsequent intransigence during the weeks that followed, manifest an intent to pressure the Debtor to acquiesce to their demands and, as attorney Dore wrote, "avoid …court intervention." At the same time, the record indicates that the Respondents actions were not unprovoked. The history of the proceedings in the state court collection case before the filing of the bankruptcy is punctuated by Mr. Acevedo's repeated failure to appear at hearings or comply with production orders. Indeed, he manifested a general disregard of the orders of the circuit court. Upon consideration of all these factors, this Court further finds that exemplary damages in the amount of $500.00 are an appropriate and proportional sanction for the Respondents' conduct.

## CONCLUSION

For the foregoing reasons, the Debtor's motion is GRANTED. Further, the Court awards to the Debtor and against CCS and its attorneys James M. Dore and John M. Dore compensatory damages in the amount of $625.50 together with the Debtor's reasonable attorney's fees and costs incurred for this motion in the amount of $7,964.20. The Court further awards the Debtor $500.00 in punitive damages as a sanction against the Respondents.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

Dated: March 8, 2016

ENTER

_____
Thomas M. Lynch
United States Bankruptcy Judge